UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNSAUCE FOODS INDUSTRIAL CORP., LTD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SON FISH SAUCE USA CORPORATION,<br><br>　　　　Defendant. | Case No. 22-cv-08973-PCP<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 43 |

In this lawsuit, plaintiff Sunsauce Foods Industrial Corp., Ltd alleges that California-based Son Fish Sauce USA Corporation is infringing Sunsauce's trademark under Section 32 of the Lanham Act, 15 U.S.C. § 1114. Sunsauce now seeks a preliminary injunction enjoining Son Fish from using the SON SAUCE mark in packaging, marketing, selling, and distributing its sauce products. For the following reasons, Sunsauce's motion is denied.

## BACKGROUND

Sunsauce is a Thailand-based company that produces and sells Thai-style sauces and related food products. Son Fish is a California-based company that produces and sells fish sauce in the United States. Sunsauce alleges that Son Fish's "SON SAUCE" mark is likely to cause confusion among consumers given Sunsauce's existing "SUNSAUCE" composite mark, which was registered with the USPTO in July 2013 in connection with sauces and related food products (Reg. No. 4,363,095). Shown below for reference are the SUNSAUCE and SON SAUCE marks.



Several years after Sunsauce registered its mark with USPTO, Son Fish applied for a trademark for its SON SAUCE mark (both in word and design form). Its application, however, was denied in 2020 based on the USPTO's finding of a likelihood of confusion with Sunsauce's SUNSAUCE mark. Son Fish thereafter filed a petition with the Trademark Trial and Appeal Board in June 2022 seeking to cancel Sunsauce's trademark registration on the ground that Sunsauce had either abandoned its mark or failed to adequately use it in the United States.

Sunsauce filed this lawsuit on December 19, 2022, asserting a Lanham Act trademark infringement claim as well as claims for common law trademark infringement, unfair competition under California's Unfair Competition Law, and unfair competition under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a). Sunsauce filed its motion for a preliminary injunction just over one year later, on December 21, 2023. Sunsauce premises its motion solely upon its Lanham Act trademark infringement claim.

## LEGAL STANDARDS

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit also applies an alternative "sliding scale" approach to the *Winter* factors wherein "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

## ANALYSIS

For several reasons, Sunsauce has not established its entitlement to a preliminary injunction.

First, Sunsauce has not provided the evidentiary basis required to justify preliminary

injunctive relief. "A preliminary injunction is an extraordinary remedy" that is "never awarded as of right" and "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22, 24 (2008). Although "the rules of evidence do not apply strictly to preliminary injunction proceedings," *Herb Reed Enterprises, LLC v. Fla. Entertainment Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013), the party seeking a preliminary injunction still bears the burden to provide the Court with probative evidence demonstrating a likelihood that they will be able to establish their case through admissible evidence at trial.

Notwithstanding this burden, Sunsauce initially supported its preliminary injunction motion with only a single declaration from one of its attorneys. That declaration described the USPTO proceedings involving Son Fish's rejected trademark application and provided copies of Son Fish's website and product listing on Amazon. Dkt. No. 43-2. To establish both a likelihood of success on the merits, including by showing a likelihood of consumer confusion, and that irreparable injury was likely in the absence of injunctive relief, Sunsauce relied solely on the allegations of its unverified complaint. After Son Fish's opposition noted the absence of any probative evidence that Sunsauce operated in the U.S. market, Sunsauce submitted a declaration from another one of its attorneys containing purported receipts of shipments to the United States by Sunsauce and copies of Amazon pages advertising Sunsauce's products. Dkt. No. 49-1. The declarant attorney does not contend that he has any personal knowledge of the shipments or sales purportedly documented in the receipts or Amazon pages he provided with his declaration. Dkt. No. 49-6 (Exhibit E).

By premising its motion solely upon an unverified complaint and two declarations from attorneys lacking personal knowledge, Sunsauce has failed to provide the Court with the kind of probative evidence required to justify the extraordinary remedy of a preliminary injunction. Courts apply looser evidentiary standards when considering preliminary injunction motions because those motions are usually filed early in the litigation under exigent circumstances. *See, e.g.*, *Herb Reed Enterprises*, 736 F.3d at 1250 n.5 (explaining that courts may rely on inadmissible evidence at the preliminary injunction stage "[d]ue to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development"). This case, however, had been pending for

more than a year before Sunsauce ever sought preliminary injunctive relief. Moreover, Sunsauce has not provided any compelling reason why it could not have produced a declaration from an owner or employee of Sunsauce with personal knowledge of the allegations in its complaint and Sunsauce's business in the U.S. market—evidence available to Sunsauce both upon the filing of its complaint and more than a year thereafter.

Second, Sunsauce fails to show that it is likely to succeed on the merits of its trademark infringement claim or that its claim presents serious questions on the merits.

To succeed on a Lanham Act trademark infringement claim, a plaintiff must show that it has a protectible ownership interest in its registered mark and that the defendant's use of its mark is likely to cause consumer confusion. *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1144 (9th Cir. 2011). "[F]ederal registration of a trademark constitutes prima facie evidence of the validity of the registered mark and of [the registrant's] exclusive right to use the mark in commerce." *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006). Because the Court can take judicial notice of Sunsauce's trademark registration, Sunsauce has satisfied the first requirement for a Lanham Act trademark infringement claim.

The second element of such a claim is a likelihood of consumer confusion. To determine if another's use of a registered mark is likely to cause consumer confusion, courts in the Ninth Circuit consider: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1027 (9th Cir. 2024) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979)).

Sunsauce argues that the similarity of the marks on related products sold in convergent marketing channels to the same class of purchasers engenders customer confusion. Sunsauce also contends that Son Fish's use of its mark notwithstanding actual knowledge of Sunsauce's mark through Son Fish's rejected trademark applications establishes an intent to deceive the public. *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993) ("When an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive

4

1 the public."). Sunsauce further argues that this Court should consider that the USPTO rejected Son
2 Fish's trademark applications on the grounds that there was a likelihood of confusion with
3 Sunsauce's pre-existing mark. Dkt. No. 43-6 (final office action); *see JL Beverage Co., LLC v. Jim*
4 *Beam Brands Co.*, 828 F.3d 1098, 1109 (9th Cir. 2016) (considering the USPTO's preliminary
5 observations during the assessment process in finding there may be a likelihood of confusion).

6 Son Fish responds that the marks are sufficiently distinct such that a "reasonably prudent
7 consumer in the marketplace" would not be confused by the origin of a good bearing one of the
8 marks. *Rearden LLC v. Rearden Commerce*, 638 F.3d 1190, 1214 (9th Cir. 2012). Specifically,
9 Son Fish argues that the marks look very different despite their phonetic similarity, that its
10 products are primarily sold in the United States whereas Sunsauce's are largely and possibly
11 entirely sold abroad, and that Sunsauce has not presented any evidence of actual confusion in the
12 marketplace.

13 At this stage of the proceedings, Son Fish appears to have the better argument with respect
14 to the likelihood of consumer confusion. "To constitute trademark infringement, use of a mark
15 must be likely to confuse an *appreciable* number of people as to the source of the product."
16 *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002). Here, the marks appear to
17 be sufficiently distinct to avoid confusing an appreciable number of consumers. Despite their
18 phonetic similarity, the marks are spelled differently, the SUNSAUCE composite mark contains
19 Thai lettering, and the SON SAUCE mark includes a space before the word "sauce."

20 Further, Sunsauce has failed to provide probative evidence that it actually sells fish sauce
21 in the United States bearing its mark. As noted already, Sunsauce provided (with its reply brief) a
22 declaration by one of its attorneys with attached exhibits containing purported receipts of product
23 shipments from Thailand to the United States. Dkt. Nos. 49-1; 49-6 (Exhibit E). Even if those
24 receipts are considered probative evidence notwithstanding the attorney's failure to provide any
25 basis for concluding that he has personal knowledge regarding their authenticity, the majority of
26 shipments occurred after the complaint was filed, and the receipts themselves do not identify
27 where the sauces were actually marketed or sold. Conversely, Son Fish has provided declarations
28 from two experienced Asian / Ethnic sauce distributors in the United States who state that they

have never even heard of Sunsauce's products and do not recognize the SUNSAUCE mark. Dkt. Nos. 46-3, 46-4. Moreover, many of the listed Sunsauce products that were shipped to the United States were not fish sauces but chili suki sauces. Given the limited number of (largely post-complaint) shipments to the United States by Sunsauce of primarily non-fish sauce products and the lack of evidence that the two companies' products are in proximity or sold through the same marketing channels, the likelihood of American consumer confusion as between Sunsauce's products and Son Fish's fish sauce appears to be limited.[1]

In addition, Sunsauce has not provided any probative evidence of actual confusion in the marketplace, while Son Fish (as noted already) has provided two declarations by experienced Asian / Ethnic sauce distributors in the United States who suggest that no such confusion exists because Sunsauce has not operated in the U.S. market to any meaningful extent. Although evidence of actual consumer confusion is generally less important at the preliminary injunction phase, *Network Automation, Inc.*, 638 F.3d at 1151, that Son Fish has produced evidence undermining any finding of actual confusion while Sunsauce has provided no contrary evidence more than a year after the filing of its lawsuit suggests that this factor will also weigh in Son Fish's favor at trial.

For these reasons, Sunsauce has demonstrated neither a likelihood of success on the merits nor serious questions going to the merits of its trademark infringement claim.

Third, and finally, the balance of the equities does not favor the issuance of an injunction here. Sunsauce's proposed injunction would entirely halt Son Fish's business, as it would be unable to package, market, sell, or distribute the products bearing the SON SAUCE mark that constitute the entirety of its existing business. It would also deprive Son Fish of the benefits of all

---

[1] While the USPTO denied Son Fish's trademark applications due to a likelihood of confusion with Sunsauce's mark, the USPTO was not presented with evidence regarding the limited presence of Sunsauce's fish sauce products in the United States and thus could not comment on actual marketplace confusion. Additionally, the USPTO did not (and could not) find that Son Fish's mark infringed Sunsauce's mark, only that the marks may cause consumer confusion. The Court accordingly cannot find on this basis alone that Son Fish intended to deceive the public through its continued use of the SON SAUCE mark after discovering the SUNSAUCE mark through its rejected trademark applications.

of the work that it has put into developing its mark over more than ten years of operations. Conversely, Sunsauce waited more than a year after filing this lawsuit to seek a preliminary injunction, suggesting that the harm it is suffering in the absence of an injunction is limited. That the balance of hardships does not tip "sharply towards the plaintiff" but instead strongly favors denying relief further supports denial of Sunsauce's preliminary injunction motion. *Cottrell*, 632 F.3d at 1135.

## CONCLUSION

For the foregoing reasons, Sunsauce's motion for a preliminary injunction is denied.

**IT IS SO ORDERED.**

Dated: May 14, 2024

P. Casey Pitts
United States District Judge